UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CIV-62898-RAR

**RICHARD WARREN**,

    Petitioner,

v.

**MARK S. INCH**,

    Respondent.

_____/

## ORDER OF DISMISSAL

**THIS CAUSE** comes before the Court on Petitioner's *pro se* Second Amended Habeas Corpus Petition pursuant to 28 U.S.C. § 2254 in which he challenges the state court judgment in Case No. 05-17270-CF-10-A. *See* Second Amended Petition [ECF No. 1] ("Sec. Am. Pet."). Rule 4 of the Rules Governing Section 2254 Cases authorizes courts to dismiss a habeas petition arising under § 2254 "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court[.]" *See also* 28 U.S.C. § 2243 (stating an order to show cause should issue "unless it appears from the application that the applicant or person detained is not entitled" to relief). Consistent with that authority, courts may *sua sponte* dismiss a § 2254 petition if the parties are afforded "notice of [the] decision and an opportunity to be heard in opposition." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 654 (11th Cir. 2020). Similarly, the Supreme Court has addressed a federal court's authority to *sua sponte* dismiss habeas petitions even after the State omits or erroneously concedes the issue of timeliness. *See Day v. McDonough*, 547 U.S. 198, 205, 210–11 (2006).

Here, Respondent, in its Response to the Order to Show Cause, argues the Second Amended Petition is time-barred for a variety of reasons. *See generally* Response to Order to Show Cause [ECF No. 20] at 38–69 ("Resp."). Respondent is ultimately correct, but the Court has taken a more straightforward approach to arrive at the same conclusion. Based on the foregoing authorities, and for the reasons stated herein, the Second Amended Petition is **DISMISSED as time-barred** and the parties are hereby notified of their opportunity to present their positions regarding this Order.

## PERTINENT PROCEDURAL HISTORY

Following a jury trial in which the jury found Petitioner guilty as charged, *see* Jury's Verdict, Respondent's Exhibit 25 [ECF No. 21-1] at 127–33 ("Verdict"), the trial court entered its judgment convicting Petitioner of (1) burglary (Count One), (2) kidnapping (Count Two), (3) aggravated battery (Count Three), (4) grand theft of a motor vehicle (Count Four), (5) armed burglary (Count Five), and (6) possession of a concealed weapon by a convicted felon (Count Six). *See* Initial Judgment, Respondent's Exhibit 29 [ECF No. 21-1] at 141 ("In. Judgment"). The trial court subsequently entered its sentence of life imprisonment on Counts One, Two, and Five; 30 years' imprisonment on Counts Three and Six; and 10 years' imprisonment on Count Four. *See* Initial Sentencing Order, Respondent's Exhibit 30 [ECF No. 21-1] at 143–60 ("In. Sentencing Order"). All sentences ran concurrent to each other. *See id.* The Initial Judgment and Initial Sentencing Order were entered on November 3, 2006. *See* In. Judgment; In. Sentencing Order.

Although Petitioner filed a direct appeal, the Florida Fourth District Court of Appeal ("Fourth DCA") affirmed without a written decision on June 11, 2008. *See Warren v. State*, 983 So. 2d 1161 (Fla. 4th DCA 2008).

During postconviction, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 with an accompanying memorandum in support. *See generally* Petitioner's Rule

3.850 Motion, Respondent's Exhibit 42 [ECF No. 21-2] at 1–43 ("Rule 3.850 Mot."); Petitioner's Memorandum of Law in Support of Rule 3.850 Motion, Respondent's Exhibit 43 [ECF No. 21-2] at 44–115. Petitioner later filed a motion to amend his Rule 3.850 motion to add three more claims. *See* Motion to Amend Rule 3.850 Motion, Respondent's Exhibits 52 [ECF No. 21-2] at 252–59. The trial court denied all claims. *See* Order Denying Motion for Postconviction Relief and Amended Motion for Postconviction Relief, Respondent's Exhibit 55 [ECF No. 21-3] at 2–8.

Reviewing the trial court's denial of the Rule 3.850 Motion and Motion to Amend Rule 3.850 Motion, the Fourth DCA affirmed in part, reversed in part, and remanded "with instructions that the conviction and sentence for possession of a concealed weapon by a convicted felon[, Count Six,] be vacated." *Warren v. State*, 125 So. 3d 284, 285 (Fla. 4th DCA 2013).

Once remanded, the trial court vacated Count Six—the possession of a concealed weapon by a convicted felon charge. *See* Order Vacating Count Six, Respondent's Exhibit 70 [ECF No. 21-3] at 221–25. In a separate order, the trial court entered its "Corrected Judgment," which re-imposed Counts One through

 Five "nunc pro tunc" to November 3, 2006. *See* Corrected Judgment, Respondent's Exhibit 71 [ECF No. 21-3] at 227–28 ("Nunc Pro Tunc Judgment"). The trial court's new sentencing order also made clear that the re-imposed sentences were "nunc pro tunc" to November 3, 2006. *See* Corrected Sentence, Respondent's Exhibit 72 [ECF No. 21-3] at 229–45 ("Nunc Pro Tunc Sentencing Order"). In fact, the trial court made its intent unambiguous by writing "nunc pro tunc" on every page of those orders. *See generally* Nunc Pro Tunc Judgment; Nunc Pro Tunc Sentencing Order. Pertinently, and as stated earlier, November 3, 2006 is the date on which the trial court entered its Initial Judgment and Initial Sentencing Order. *See generally* In. Judgment; In. Sentencing Order.

Petitioner subsequently filed a state habeas petition directly in the Fourth DCA claiming his appellate counsel was ineffective as early as July 1, 2013,[1] which the Fourth DCA dismissed as untimely. *See generally* State Appellate Docket 4D13-3001, Respondent's Exhibit 73 [ECF No. 21-3] at 246–47; State Habeas Pet.; Order Dismissing as Untimely, Respondent's Exhibit 76 [ECF No. 21-4] at 25–26 ("Fourth DCA's Habeas Dismissal"). Undeterred, Petitioner filed a motion for rehearing. *See* Motion for Rehearing, Respondent's Exhibit 77 [ECF No. 21-4] at 28–33. The Fourth DCA denied the motion on October 1, 2013. *See* Order Denying Rehearing, Respondent's Exhibit 78 [ECF No. 21-4] at 34–35.

Petitioner filed a second motion for postconviction relief under Fla. R. Crim. P. 3.850 on July 10, 2013. *See* Second Rule 3.850 Motion, Respondent's Exhibit 79 [ECF No. 21-4] at 36–80 ("Sec. Rule 3.850 Mot."). The trial court denied the second Rule 3.850 motion "as both untimely and impermissibly successive." *See* Order Denying Second Rule 3.850 Motion [ECF No. 21-5] at 79–82 ("Order Denying Sec. Rule 3.850 Mot."). Petitioner filed a motion for rehearing. *See* Motion for Rehearing on Second Rule 3.850 Motion, Respondent's Exhibit 83 [ECF No. 21-5] at 84–88. The trial court summarily denied rehearing on September 19, 2014. *See* Order Denying Rehearing on Second Rule 3.850 Motion, Respondent's Exhibit 84 [ECF No. 21-5] at 89–90. The Fourth DCA summarily affirmed Petitioner's subsequent appeal. *Warren v. State*, 163 So. 3d 1219 (Fla. 4th DCA 2015); *see also* Petitioner's Notice of Appeal on Second Rule 3.850 Motion, Respondent's Exhibit 98 [ECF No. 21-5] at 188–90. The Fourth DCA denied Petitioner's subsequently filed motion for rehearing on May 7, 2015. *See* Order Denying Petitioner's May 7, 2015 Motion for Rehearing, Respondent's Exhibit 101 [ECF No. 21-5] at 198–99. The mandate

---

[1] The Court uses the phrase "as early as" here because Petitioner never dated on what day in July 2013 he signed and presumably mailed for filing his state habeas petition. *See* State Habeas Petition, Respondent's Exhibit 74 [ECF No. 21-3] at 277 ("State Habeas Pet.")

issued on July 15, 2015. *See* 2015 Mandate, Respondent's Exhibit 102 [ECF No. 21-5] at 100–02.

To recap, the litigation on Petitioner's State Habeas Petition and his Second Rule 3.850 Motion initiated as early as July 1, 2013 and ended on July 15, 2015. During that interval of time, Petitioner filed various petitions to obtain the victim's medical records. *See generally* State Appellate Docket for 4D14-599, Respondent's Exhibit 85 [ECF No. 21-5] at 91–92; Trial Court's Order Dismissing Without Prejudice Petition for Mandamus, Respondent's Exhibit 91 [ECF No. 21-5] at 168–70; Clerk of Court's Response to Order to Show Cause, Respondent's Exhibit 92 [ECF No. 21-5] at 171–73; Reply to Clerk of Court's Response, Respondent's Exhibit 93 [ECF No. 21-5] at 174–76. On February 4, 2016, after the previously mentioned gap of time elapsed, the trial court reviewed the requested information via *in camera* review. *See* Order Directing Clerk to Provide Records for *In Camera* Review, Respondent's Exhibit 94 [ECF No. 21-5] at 177–79. Soon after, on February 11, 2016, the trial court granted mandamus so that Petitioner could receive copies of the victim's medical records "with proper redactions." *See* Order Granting Mandamus, Respondent's Exhibit 95 ECF No. 21-5] at 180–82.

Nine months later, on November 10, 2016, Petitioner filed a petition for writ of habeas corpus, or in the alternative, a belated appeal in the Fourth DCA. *See* Petition for Belated Appeal, Respondent's Exhibit 104 [ECF No. 21-5] at 204–42. The Fourth DCA denied Petitioner the opportunity for a belated appeal on December 12, 2016. *See* Corrected Order Denying Petition for Belated Appeal, Respondent's Exhibit 107 [ECF No. 21-6] 231–232 ("Corrected Order Denying Belated Appeal").

With the information he received during his mandamus proceedings, Petitioner filed his third motion for postconviction relief under Fla. R. Crim. P. 3.850 on December 5, 2017. *See* Initial Third and Successive Motion for Postconviction Relief under Fla. R. Crim. P. 3.850,

Respondent's Exhibit 108 [ECF No. 21-6] ("In. Third Rule 3.850 Mot."). Later, Petitioner filed a final amended version of his third and successive Rule 3.850 motion on September 4, 2018. *See* Final Amended Third and Successive Motion for Postconviction Relief under Fla. R. Crim. P. 3.850, Respondent's Exhibit 119 [ECF No. 21-7] ("Final Am. Third Rule 3.850 Mot."). All of the claims within that final amended version challenged matters that pertained to the guilt phase. *See generally id.* The trial court, on April 1, 2019, found that "the instant motions [did] not allege a legitimate ground of newly discovered evidence, fundamental change in law, or an illegal sentence" and, for that reason, "the motion [was] time-barred." *See* Order Denying Defendant's Successive Motions for Postconviction Relief, Respondent's Exhibit 123 [ECF No. 21-8] at 120–25 ("Order Denying Third Rule 3.850 Mot."). The Fourth DCA summarily affirmed. *See Warren v. State*, 280 So. 3d 489 (Fla. 4th DCA 2019).

Shortly thereafter, on November 19, 2019, Petitioner initiated this action with his initial petition. *See* Initial Petition [ECF No. 1] ("In. Pet."). Petitioner's Second Amended Petition, however, is now before the Court. *See* Sec. Am. Pet.

## **APPLICABLE LEGAL STANDARD**

Stated broadly, "a person in custody pursuant to the judgment of a State court" has a one-year period to file a habeas corpus petition. *See* 28 U.S.C. § 2244(d)(1). That limitation period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

> recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). Of course, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not "counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

## **ANALYSIS**

### A.  *§ 2244(d)(1)(A)*

Under 28 U.S.C. § 2244(d)(1)(A), a habeas petitioner has one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file their petition in federal court. And "the federal judgment becomes final when [the U.S. Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or, if a petitioner does not seek certiorari, when the time for filing a certiorari petition expires." *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (cleaned up).

As the Eleventh Circuit has explained, "the time for pursuing review in the Supreme Court of the United States is governed by Supreme Court Rules 13.1 and 13.3, which together provide that a petition for a writ of certiorari to review a judgment . . . entered by a state court of last resort . . . is timely when it is filed . . . within 90 days after entry of the judgment . . . and not from the issuance date of the mandate." *Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 617–18 (11th Cir. 2019) (cleaned up). Stated plainly, for petitioners who do not seek discretionary review from the Florida Supreme Court, the judgment becomes final 90 days after the District Court of

Appeal enters a judgment affirming the conviction and sentence. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275–76 (11th Cir. 2006).

Here, in order to determine the date on which the judgment became "final," the Court must first answer what, if any, significance does the corrected judgment and corrected sentence (*i.e.*, the Nunc Pro Tunc Judgment and Nunc Pro Tunc Sentencing Order) present in this case. The short answer is none.

In *Ferreira*, the U.S. Court of Appeals for the Eleventh Circuit held that "AEDPA's statute of limitations begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence." *See Ferreira*, 494 F.3d at 1293 (emphasis in original). Thus, Mr. Ferreira's resentencing proceeding "triggered the running of AEDPA's statute of limitations [even though his] habeas petition only challenge[d] the original [and underlying] 1997 conviction." *See id.* at 1292–93. In doing so, the Eleventh Circuit "indicated, where a resentencing [proceeding] results in *a new judgment*, the new judgment restarts the statute of limitations." *Thompson v. Fla. Dep't of Corr.*, 606 F. App'x 495, 502 (11th Cir. 2015) (discussing *Ferreira*) (emphasis added).

But "not all post-judgment changes or corrections to a sentence" will qualify as a "new judgment for purposes of § 2244(d)(1)(A)." *Thompson*, 606 F. App'x at 502 n.8 (citations omitted); *see also Osbourne v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1261, 1265–66 (11th Cir. 2020) (discussing this principle with respect to the restriction on second or successive habeas petitions). For example, in the context of resolving whether a corrected sentence removed the restriction on second or successive habeas petitions in *Patterson*, the Eleventh Circuit held that removing a judgment's imposition of chemical castration did not make the modification qualify as a new judgment. *See Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1326–28 (11th Cir. 2017).

As previously mentioned, the trial court vacated Petitioner's conviction and resulting sentence for possession of a firearm by a convicted felon and entered a corrected judgment re-imposing the unaffected convictions and sentences with its "nunc pro tunc" designation. Respondent claims the "corrected judgment and sentences" did not "re-set the statute of limitations." Resp. at 46. Respondent primarily claims the corrected orders, entered after a successful round of postconviction review, were "the equivalent of correcting a scrivener's error." *Id.* The Court declines to resolve whether the Nunc Pro Tunc Judgment or Nunc Pro Tunc Sentencing Order fixed a scrivener's error because the Second Amended Petition is untimely for reasons that are more obvious than what Respondent has argued in its Response.

The Eleventh Circuit has held that a Florida court's corrected sentence, imposed nunc pro tunc, did not qualify as a new judgment because the nunc pro tunc designation "related back to the date of the initial judgment[.]" *See Osbourne*, 968 F.3d at 1266–67. This makes sense because "under Florida law, nunc pro tunc means now for then [thus] when a legal order or judgment is imposed nunc pro tunc it refers, not to a new or de novo decision, but to the judicial act previously taken, concerning which the record was absent or defective." *Id.* at 1266 (collecting cases) (cleaned up).

Like the petitioner in *Osbourne*, the orders re-imposing Petitioner's unaffected convictions and sentences contains a nunc pro tunc designation. Therefore, the Nunc Pro Tunc Judgment and Nunc Pro Tunc Sentencing Order do not qualify as a new judgment under *Ferreira*—they instead relate back to the date of the Initial Judgment and Initial Sentencing Order, making them irrelevant to the Court's timeliness inquiry.[2] *See Osbourne*, 968 F.3d at 1266–67.

---

[2] True, *Osbourne* addressed whether a nunc pro tunc designation on a corrected sentence qualified as a new judgment for purposes of the restriction on second or successive petitions pursuant to § 2244(b), not timeliness. *See Osbourne*, 968 F.3d at 1266–67. But this makes no difference for two reasons. First, *Osbourne* relied on *Burton v. Stewart*, 549 U.S. 147, 156 (2007), *see Osbourne*, 968 F.3d at 1264, and the

With that settled, the Court now addresses whether the Second Amended Petition is timely pursuant to § 2244(d)(1)(A)—but does so by using the date of the Initial Judgment and Initial Sentencing Order because the nunc pro tunc designation reaches that far into the past. *Compare* In. Judgment *and* In. Sentencing Order, *with* Nunc Pro Tunc Judgment *and* Nunc Pro Tunc Sentencing Order; *see also Osbourne*, 968 F.3d at 1266 ("[W]hen a legal order or judgment is imposed nunc pro tunc it refers, not to a new or de novo decision, but to the judicial act previously taken."). Because the Fourth DCA affirmed the Initial Judgment and Initial Sentencing Order on June 11, 2008, *see Warren v. State*, 983 So. 2d 1161 (Fla. 4th DCA 2008), Petitioner's judgment for § 2244(d)(1)(A) purposes became "final" on September 9, 2008 (*i.e.*, the last day he could have filed a petition for writ of certiorari in the Supreme Court). *See Chavers*, 468 F.3d at 1275–76.

Without properly tolling motions in State court, Petitioner would have needed to file his federal habeas petition in this Court by September 9, 2009. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) ("[T]his Court has suggested that the limitations period should be calculated according to the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run.").

The Court need not resolve every interval of time during which there were no properly filed motions capable of tolling the limitations period. It is enough to look at a more than two-year period during which no properly filed filings seeking other collateral review were pending (*i.e.*, July 1, 2013 to July 15, 2015). Only motions that are "properly filed" toll the one-year

---

Eleventh Circuit's decision in *Ferreira* stems from *Burton*. *See Ferreira*, 494 F.3d at 1288 ("After a thorough consideration of *Burton* and reconsideration of our relevant precedent, we now hold that AEDPA's statute of limitations runs from the date the judgment pursuant to which the petitioner is in custody becomes final, which is the date both the conviction and sentence the petitioner is serving become final."). Second, the Eleventh Circuit cited *Ferreira* to conclude a habeas petition was not successive in *Insignares*. *See Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1280–81 (11th Cir. 2014) (explaining that *Ferreira*'s holding on timeliness extends to the second or successive restriction when a new judgment has been entered even though the petitioner challenges only their underlying conviction). Accordingly, *Osbourne*'s reasoning necessarily and logically extends to the timeliness inquiry.

limitations period. *Sweet v. Sec'y, Fla. Dep't of Corr.*, 467 F.3d 1311, 1315 (11th Cir. 2006) ("This much is clear: an application for state post-conviction or other collateral review tolls the federal period of limitation only if it was 'properly filed.'" (quoting § 2244(d)(2))). And, "[q]uite simply, the Supreme Court said that '[w]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2),'" because "time limits, no matter their form, are 'filing' conditions." *Id.* at 1316 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005)).

In *Carey v. Saffold*, for instance, the Supreme Court was presented with a one-sentence opinion from the California Supreme Court denying relief "on the merits and for lack of diligence." 536 U.S. 214, 217–18 (2002). Ultimately, "[t]he Court held that when a state court determines that a motion is untimely, that is the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits." *Sweet*, 467 F.3d at 1317–18 (citing *Saffold*, 536 U.S. at 226 (cleaned up)). So, if "a state court determines that a petition is untimely, and also rejects the substantive claim on the merits, the timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed[.]'" *Id.* at 1318.

Petitioner filed his second Rule 3.850 motion sometime in July 2013. *See* Sec. Rule 3.850 Mot. The trial court denied the second Rule 3.850 motion "as both untimely and impermissibly successive." *See* Order Denying Sec. Rule 3.850. And, since the Fourth DCA summarily affirmed Petitioner's appeal of that ruling in *Warren v. State*, 163 So. 3d 1219 (Fla. 4th DCA 2015), the Fourth DCA silently agreed that the second Rule 3.850 motion was untimely under state procedural rules. *See Sweet*, 467 F.3d at 1317–18; *cf. Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (explaining that "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that does provide a relevant rationale," if one exists, to assess on what grounds

the appellate court presumptively based its affirmance upon). Thus, as of the second Rule 3.850 motion's filing, it and the subsequent litigation of that motion could not toll the limitations period because the second Rule 3.850 motion never qualified as a "properly filed" motion as defined by § 2244(d)(2). *See Sweet*, 467 F.3d at 1318. As a reminder, the Fourth DCA issued its mandate on July 15, 2015. *See* 2015 Mandate.

Between that interval of time, July 1, 2013 to July 15, 2015, there were no filings that qualify under both of § 2244(d)(2)'s criteria: (1) being "properly filed" and (2) qualifying as a filing seeking "other collateral review." First, the Fourth DCA concluded that Petitioner's state habeas petition—filed in July 2013 directly in the Fourth DCA—was untimely, *see* Fourth DCA's Habeas Dismissal, so from its inception that litigation was not "properly filed" and thus could not toll the limitations period. *See Sweet*, 467 F.3d at 1316 ("[T]ime limits, no matter their form, are 'filing' conditions." (cleaned up)). And, second, Petitioner's various filings seeking disclosure of the victim's medical records do not qualify as filings seeking "other collateral review" because they are discovery-related filings. *See, e.g.*, *Wall v. Kholi*, 562 U.S. 545, 547 (2011) ("[T]he phrase 'collateral review' in § 2244(d)(2) means *judicial review of a judgment* in a proceeding that is not part of direct review." (emphasis added)); *Brown v. Sec'y for Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008) ("While a properly filed Rule 3.850 motion seeking to set aside a conviction would undoubtedly toll AEDPA's limitations period during its pendency, it is equally as well-settled that a discovery motion does not.").

Observing that no tolling motions were pending in State court from July 1, 2013 through July 15, 2015, over two years of untolled time ticked away. But, of course, Petitioner is entitled to only one year of untolled time under § 2244(d). *See generally* 28 U.S.C. § 2244(d).

Accordingly, this means Petitioner's limitations period expired, at the latest,[3] on July 1, 2014 (*i.e.*, a one-year period without a properly tolling motion after the judgment became final), because there was nothing left to be tolled after that point. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("[A] state court petition like Tinker's that is filed following the expiration of the federal limitations period cannot toll that period because there is no period remaining to be tolled." (internal quotations omitted)). As nothing in State court could have statutorily tolled the limitations period after July 1, 2014, all events in State court that transpired between that date and the date Petitioner filed his initial Petition in this Court ran untolled. *See id.*

This action began with Petitioner filing his initial Petition on November 19, 2019. *See* In. Pet. Thus, Petitioner began this action after, at least, 1967 untolled days elapsed (*i.e.*, the time between July 1, 2014 and November 19, 2019). Because Petitioner was entitled to one year or 365 days, he is late—at the very least—by 1602 days. And Petitioner provides no explanation for why this action is timely under § 2244(d)(1)(A). *See* Sec. Am. Pet. at 19–20. In short, the Second Amended Petition is not timely under § 2244(d)(1)(A).

### B.  *§ 2244(d)(1)(B)–(D)*

In his Second Amended Petition, Petitioner never references any provision of § 2244(d). *See generally* Sec. Am. Pet. at 19–20. Because Petitioner never alleges that a State impediment prevented filing in this Court or cites a new Supreme Court case as the legal basis for his claim, *see generally id.*, the provisions of § 2244(d)(1)(B) and (C) do not apply to this case.

As for § 2244(d)(1)(D), the result is the same—it does not apply—but its inapplicability to this case requires a more robust explanation. Petitioner argues that his defense attorney did not provide him with copies of "favorable discovery evidence… before trial, during trial, or after trial"

---

[3] The Court uses the phrase "at the latest" here because this order does not factor in any untolled time that may have transpired before July 1, 2013.

despite repeated attempts to receive that information. *Id.* Petitioner, however, provides no details as to what efforts he took before or during trial to obtain that information. Petitioner also contends "the state prosecutor with[eld] this [favorable discovery] evidence." *Id.* Liberally construed, it is possible that Petitioner is attempting to argue that some or all of his claims are timely because he did not have the factual predicate for his claims readily available to him.

That is not enough. To qualify under § 2244(d)(1)(D)'s trigger date, the claim or claims run from "the date on which the factual predicate of the claim or claims presented could have been discovered *through the exercise of due diligence*." 28 U.S.C. § 2244(d)(1)(D) (emphasis added). Petitioner provides no reasonably specific allegations as to what efforts he took to obtain this allegedly favorable information before or during his trial. *See generally* Sec. Am. Pet. Therefore, he has not met his burden of showing any portion of his Second Amended Petition is timely under § 2244(d)(1)(D) because the information could have been discovered with a modicum of due diligence before the judgment became final.

Moreover, Petitioner would still be untimely under § 2244(d)(1)(D) even if the Court were to assume that it applied to this case. Based on Petitioner's attestations, he received the information he sought during his discovery proceedings, by mail, on March 24, 2016. *See* Sec. Am. Pet. at 20. Thus, without statutory tolling, Petitioner had to initiate a habeas action in this Court by March 24, 2017. *See Downs*, 520 F.3d at 1318 (applying the "anniversary method").

Stated earlier, Petitioner filed a petition for a belated appeal in the Fourth DCA on November 10, 2016, which the Fourth DCA denied on December 12, 2016. *See* Corrected Order Denying Belated Appeal. But a petition for belated appeal does not qualify for statutory tolling under § 2244(d)(2). *See Danny v. Sec'y, Fla. Dep't of Corr.*, 811 F.3d 1301, 1305 (11th Cir. 2016) ("[A] Florida prisoner's petition for belated appeal does not toll the limitation period for a federal petition creates symmetry with how Florida courts treat the same kinds of filings[.]"). Likewise,

Petitioner's third Rule 3.850 motion litigation—initiated on December 5, 2017—was untimely under state procedural rules, *see* Order Denying Third Rule 3.850 Mot., so the litigation on that motion cannot qualify for statutory tolling either. *See Sweet*, 467 F.3d at 1317–18. The Fourth DCA evidently agreed by issuing a summary affirmance. *See Warren v. State*, 280 So. 3d 489 (Fla. 4th DCA 2019). Consequently, no "properly filed applications for State post-conviction or other collateral review with respect to the pertinent judgment or claim" were pending in State court between March 24, 2016 and March 24, 2017. Without any tolling motions during that period, this action cannot be timely under § 2244(d)(1)(D) even if it applied. In sum, unless an equitable exception excuses the untimeliness of this action, the Second Amended Petition is time-barred.

### C. *Equitable Exceptions*

Two equitable exceptions exist, but neither apply to this case. First, the limitation period may be equitably tolled. To warrant equitable tolling, Petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (cleaned up); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (same). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (cleaned up). The petitioner bears the burden of establishing the applicability of equitable tolling by making specific allegations. *See Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014) (citing *Hutchinson v. Fla.*, 677 F. 3d 1097, 1099 (11th Cir. 2012)).

Here, Petitioner provides no specific allegations for why he is entitled to equitable tolling. Nor has he articulated why he initiated this action years after he could have done so.[4] As such, he has not met his burden of showing he is entitled to equitable tolling.

---

[4] To the extent Petitioner might later argue that he should qualify for equitable tolling because he had to file discovery-related filings in State court, *see* Sec. Am. Pet. at 19–20, such an argument overlooks that

Page **15** of **19**

Second, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This exception, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Id.* at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). And, therefore, "AEDPA's time limitations apply to the typical case in which no allegation of actual innocence is made." *Id.* at 394.

For a claim of actual innocence "[t]o be credible," such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324. Needless to say, "such evidence is obviously unavailable in the vast majority of cases, [meaning] claims of actual innocence are rarely successful." *Id.*

As applied to this case, Petitioner has conceded that the medical records were available to his Counsel before and during his trial. *See* Sec. Am. Pet. at 19 ("State court defen[s]e counsel did not provide a copy of this favorable discovery evidence for her client before trial, during trial, or after trial."). In fact, the victim's medical records were introduced and admitted at trial. *See* Trial Transcript Volume 5 [ECF No. 22-7] at 73–75. The postconviction record further shows Petitioner conceding in state court that he "knew of" the medical records during and after his trial. *See* Third Rule 3.850 Mot at 237–39. Based on Petitioner's vague and conclusory allegations in the Second Amended Petition, *see* Sec. Am. Pet. at 19–20, Petitioner has not met his burden of

---

Petitioner could have filed a habeas petition in this Court with or without those claims much sooner. *See generally Rhines v. Weber*, 544 U.S. 269, 275 (2005) (explaining that petitions containing exhausted and unexhausted claims may qualify for a stay while a litigant continues to exhaust the unexhausted claims).

showing any claim of actual innocence is founded on new or reliable evidence—much less new and reliable evidence capable of establishing that no reasonable juror would have convicted him had he relied on this evidence at trial. Therefore, he does not qualify under the actual innocence exception. Without any equitable exceptions applicable to this case, the Petition must be **DISMISSED** as time-barred.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. "[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (cleaned up). The Petition is time-barred, rendering any need for evidentiary development futile.

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253 (c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But "[w]here a district court has disposed of claims…on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'"

*Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

The procedural ruling in this Order is not subject to debate amongst reasonable jurists. Accordingly, a COA is denied.

## CONCLUSION

To summarize, the Petition is time-barred. But the Eleventh Circuit has explained that a district court should provide habeas litigants "ample notice and an opportunity to explain [why the action should not be summarily dismissed]." *See Paez*, 947 F.3d at 654. While this Order is not formally a summary dismissal because there is a response to an order to show cause in the record, Petitioner should be alerted of his opportunity to respond only because this Order addresses timeliness issues that were overlooked by Respondent.

Consistent with the Eleventh Circuit's recent decision *Turner v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 1133844 (11th Cir. Mar. 25, 2021), Petitioner will have the chance to "show that the [Court's] determination of untimeliness is incorrect" by filing a motion "to reopen this action" within **30 days (or by May 26, 2021)**, *see id.* \*2–\*3 (concluding that 30 days within which to move to reopen the case satisfies the notice requirement under *Paez*).

If he moves to reopen, Petitioner must explain why this action is not time-barred. The motion to reopen **may not exceed 10 pages in length**. Respondent will have **14 days** to reply—if it chooses to do so—and its brief may also not exceed **10 pages**. Petitioner is hereby warned that his failure to respond to this Order on time and in compliance with the Court's instructions will result in dismissal (and an entry of final judgment) without further notice. Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that the Second Amended Petition [ECF No. 12] is hereby **DISMISSED as time-barred**. Any pending motions are **DENIED as moot**. Further, any

demands for an evidentiary hearing are **DENIED**, and a COA shall **NOT ISSUE**. Lastly, because the parties may state their positions to this Order, this case is **CLOSED**.

      **DONE AND ORDERED** in Fort Lauderdale, Florida, this 26th day of April, 2021.

                                           **RODOLFO A. RUIZ II**
                                           **UNITED STATES DISTRICT JUDGE**

cc:    Richard Warren
        601912
        Taylor Correctional Institution
        Inmate Mail/Parcels
        8501 Hampton Springs Road
        Perry, FL 32348
        PRO SE

        Jeanine Marie Germanowicz
        Attorney General Office
        1515 N Flagler Drive
        Suite 900
        West Palm Beach, FL 33401-3432
        561-837-5016
        Fax: 561-837-5108
        Email: crimappwpb@myfloridalegal.com

        Noticing 2254 SAG Broward and North
        Email: CrimAppWPB@MyFloridaLegal.com